SARAH L. BRISTOL, Respondent, *v.* FRANCIS H. HULL, as Administrator of GEORGE LAMBERT, Deceased, et al., Appellants.

1. TRIAL — WHEN GOOD FAITH AND VALIDITY OF TITLE A QUESTION OF FACT. In an action upon a sheriff's indemnity bond by the claimant of a stock of goods levied upon, the question whether plaintiff had a *bona fide* title to the property as against the sheriff is for the jury, where her claim is based upon transfers from and through relatives made in transactions largely on paper.

2. EVIDENCE OF PLAINTIFF'S RELATION TO BANKRUPTCY PROCEEDINGS. Where in such an action it is contended that plaintiff waived her right of action by accepting the proceeds of a sale in bankruptcy of the stock of goods levied upon, evidence is admissible that her counsel assented to the appointment of the receiver in bankruptcy and to the sale made by him.

*Bristol* v. *Lambert*, 45 App. Div. 628, reversed.

(Argued January 18, 1901; decided February 26, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered December 1, 1899, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Francis A. Smith* and *A. K. Dudley* for appellants. The trial judge having refused to submit to the jury the questions of waiver and of title to the property, and so directed a verdict for the respondent as to those questions, the appellants, upon this appeal, are entitled to the most favorable inferences deducible from the evidence, and all disputed facts are to be treated as established in their favor. (*Pike* v. *Hon-*

*singer,* 155 N. Y. 204 ; *Higgins* v. *Eagleton,* 155 N. Y. 466 ; *Ten Eyck* v. *Whitbeck,* 156 N. Y. 349 ; *Davis* v. *Bly,* 32 App. Div. 127; 164 N. Y. 527.) The proof of waiver by respondent of the alleged conversion was clear and conclusive, and, therefore, it was error for the trial judge to withhold it from the jury. (*Brewer* v. *Sparrow,* 7 B. & C. 310 ; 14 E. C. L. 50; *Lythgoe* v. *Vernon,* 5 H. & N. 180; *Terry* v. *Munger,* 121 N. Y. 161.) The evidence as to title showed a concerted and persistent scheme between the members of the Noxon family to defraud the creditors of the original owner of the property, and pointed directly to the conclusion that Millard F. Noxon was its owner on the day of its seizure, precisely as he was when he transferred it to his father. (8 Am. & Eng. Ency. of Law [1st ed.], 766, 767; *McCanless* v. *Flinchum,* 89 N. C. 373; *Beeves* v. *Sherwood,* 45 Ark. 52; *Bagley* v. *Bowe,* 105 N. Y. 179; *Morris* v. *Wells,* 54 Hun, 634; *Nichols* v. *Morrow,* 34 N. Y. S. R. 495; *Fuller* v. *Brown,* 76 Hun, 557; *Erickson* v. *Quinn,* 47 N. Y. 410.) The notes and indorsements were kept on foot to aid the fraudulent purpose of Millard F. Noxon in retaining possession and enjoyment of the property and managing it as his own. (2 R. S. 136, § 5 ; *Archer* v. *Hubbell,* 4 Wend. 514; *Collins* v. *Brush,* 9 Wend. 198; *Blaut* v. *Gabler,* 77 N. Y. 461; *Steele* v. *Benham,* 84 N. Y. 634; *Rheinfeldt* v. *Dahlman,* 19 Misc. Rep. 162; *Brown* v. *Harmon,* 29 App. Div. 31; *Wallace* v. *Nodine,* 57 Hun, 239; *Shotter* v. *Keeler,* 22 Abb. [N. C.] 105; *Tilson* v. *Terwilliger,* 56 N. Y. 273.)

*Edgar T. Brackett* for respondent. The plaintiff fully made out her title to the stock of goods and fixtures in question so as to entitle her to recover for their value. (*Williams* v. *Whedon,* 109 N. Y. 333; *Gomez* v. *Hagaman,* 84 Hun, 148; *Commercial Bank* v. *Bolton,* 87 Hun, 547; *Lanning* v. *Streeter,* 57 Barb. 33; *Matter of True,* 4 Abb. [N. C.] 90; *Lawrence* v. *Bank of Republic,* 35 N. Y. 320; *Braem* v. *M. Nat. Bank,* 127 N. Y. 508.) The plaintiff by receiving $1,395.89, the net proceeds of the sale of her goods by the

receiver appointed in the United States District Court, did not forgive any trespass which the defendants had committed upon her property by the levy of the sheriff after this bond had been given to him, nor release the defendants from any liability because of such trespass. (*Masten* v. *Webb*, 24 Hun, 90; *Hastings* v. *Claflin*, 38 N. Y. S. R. 471; *Ball* v. *Loomis*, 29 N. Y. 412; *Davis* v. *Newkirk*, 5 Den. 92; *Dyett* v. *Hyman*, 129 N. Y. 351; *Stewart* v. *Wells*, 6 Barb. 79; *Alvord* v. *Haynes*, 13 Hun, 26; *Stillman* v. *Squire*, 1 Den. 327; *Bates* v. *Conkling*, 10 Wend. 390.)

BARTLETT, J.   Prior to July 1st, 1898, George Lambert, one of the original defendants, and whose administrator has been substituted pending the appeal to this court, recovered judgment against Millard F. Noxon and Cornwall M. Noxon, his father, in the Supreme Court for $1,079.49 damages and costs, and issued execution thereon to the sheriff of Essex county, who thereupon in the latter part of July, 1898, levied upon a stock of dry goods, which the plaintiff in this action alleged belonged to her and in which neither of the defendants had any interest.

The plaintiff having given the sheriff notice that he must not sell the goods levied upon, the latter called a jury for the purpose of determining the ownership of the property; the jury found title in the plaintiff and thereupon George Lambert executed and delivered to the sheriff a bond of indemnity, which was also executed by Orlando Kellogg and Charles N. Williams, the other defendants herein, as sureties.   Thereupon the sheriff continued in possession of the stock of goods, refusing to recognize the title of the plaintiff, thereby converting the property so far as plaintiff is concerned.

The foregoing is in substance the allegations of the complaint, which demands judgment for the sum of $4,800.00, with interest from August 15th, 1898.

The answer sets up in substance denial of plaintiff's ownership and an allegation that the property was owned by Millard F. Noxon, or by him and his father, and was in the possession

of Millard F. Noxon at the time of the levy; alleges recovery
of the judgment, the issuing of the execution and levy, the
finding of the jury and the execution of the indemnity bond;
avers that thereafter the sheriff continued in the possession of
the property until an order was made by the District Court
of the United States in a proceeding in bankruptcy instituted
by Millard F. Noxon appointing a receiver of the property
levied upon, and that said order was procured on plaintiff's
consent and the goods were afterwards sold to the highest
bidder by the receiver; that on the 12th of August, 1898,
Millard F. Noxon filed his voluntary petition in bankruptcy,
etc.; alleges insolvency of the judgment debtors against
whom a judgment was recovered by defendant Lambert; sets
up various transfers of the property that will be hereinafter
considered.

A supplemental answer was afterwards served, alleging the
sale of the property by the receiver in bankruptcy and that
the proceeds amounted to $1,395.89, which was paid over to
the plaintiff.

There were three principal issues tried under these plead-
ings: Whether the plaintiff was a *bona fide* owner of the
property alleged to have been converted; whether in the
bankruptcy proceedings the plaintiff waived her action against
the sheriff for conversion; the amount of plaintiff's damages.

The trial judge refused to submit the first two questions to
the jury, allowing them to pass only upon the question of
damages; that is, the value of the property at the time of the
levy.

In the spring of 1895, Millard F. Noxon, who had been in
business in Elizabethtown, Essex county, sold to his father,
Cornwall M. Noxon, the stock of goods then owned by him
for $8,250. In payment the father gave the son his note for
$2,000 and assumed other notes owing by the son, and upon
which the father was indorser, amounting to $6,250.00.
Among these notes so assumed was the one for $1,000.00 held
by the defendant George Lambert, and which was put into
judgment as above stated, and resulted in the levy, the validity

of which is now challenged.   A little later the son sold to his father his book accounts for $1,640.00, taking his note therefor.    At the time of this transaction Millard F. Noxon was indebted to the plaintiff, Sarah L. Bristol, in the sum of about $4,000.00, the greater part of which she had some years before placed in his hands for investment, the total amount being the proceeds of a farm and some personal property that she had sold in New Jersey, and a loan of $200.00 to Millard F. Noxon.   When his father gave Millard F. the notes for $2,000.00 on account of the stock of goods in store and the $1,640.00 for the book accounts, the son passed them over to the plaintiff and they were indorsed on a note for $3,800.00, which represented a part of his indebtedness to her.

Millard F. Noxon, the son, testified in regard to this sale to his father, that the goods remained from the first day of April, 1895, until the following January at Elizabethtown, and that they were then shipped to Broadalbin, Fulton county, or a part of them ; that his father took them there; that the witness had very little to do with transporting them; that he had something to do with it; that he assisted in packing same and that he was there at Elizabethtown for the purpose; that they were at Broadalbin in the neighborhood of six or seven months and then went to Ballston Spa; that a portion of the goods sold to his father were sent to Broadalbin and to Ballston; that he helped with the inventory and in packing and unpacking the goods; that he did not have possession of the goods at Broadalbin; that he was in the store a part of the time and attended to customers and waited on same; that he could not tell what portion of the six months he was there, perhaps all told two months out of the six.

In June, 1896, Cornwall M. Noxon sold what remained of this stock of goods to Alice J. Noxon, the wife of Millard F. Noxon.  The consideration of this transfer was about $4,000.00, and she paid it by taking up the two notes, one of $2,000.00 and one of $1,640.00, which the plaintiff, Mrs. Bristol, held against Cornwall M. Noxon, and surrendered them to her, she giving the plaintiff, Mrs. Bristol, her own note therefor.   For

the balance of the purchase price she assumed certain debts which Cornwall M. Noxon owed.

Soon after the transfer of the stock to Alice J. Noxon, it was taken to Ballston, Saratoga county, by her, and she ran the business, her husband, Millard F. Noxon, acting as her agent. This continued until about the first of October, 1897, when the goods were shipped to Elizabethtown, Essex county, and Mrs. Noxon then sold a half interest in the stock to her daughter, Mrs. Deming. The value of the stock at that time was about $3,500.00. Mrs. Deming paid $300.00 in cash, and the firm note of Noxon & Deming for $2,000.00 was given to Mrs. Noxon for the balance. Noxon & Deming ran the business until about the first of March, 1898.

In 1897, Mrs. Bristol, the plaintiff, employed an attorney of Ballston, who married her granddaughter, to protect her interests. The plaintiff, in March, 1898, was the owner of a note for $2,000.00 of the firm of Noxon & Deming, which was given to Mrs. Noxon, she having transferred the same to the plaintiff to apply on Mrs. Noxon's note for $3,774.47 held by the plaintiff. At that time the plaintiff owned the two notes of $3,800.00 and $200.00 given by Millard F. Noxon. On the one for $3,800.00 were indorsed the payments of $2,000.00 and $1,640.00 made by the notes of Cornwall M. Noxon as above stated. The plaintiff also owned the note of Alice J. Noxon for $3,774.47, which Mrs. Noxon had given to her to take up the notes of Cornwall M. Noxon, which she surrendered to him in part payment of the transfer from him to her on which had been indorsed the $2,000.00 note of Noxon & Deming.

The attorney for the plaintiff, on the first day of March, 1898, consummated a sale from Noxon & Deming to the plaintiff of the stock of goods then owned by them in Elizabethtown. The consideration of that conveyance was $2,750.00, of which $692.00 was a covenant to pay the debts of Noxon & Deming, then outstanding, and $2,000.00 by surrendering the note of Noxon & Deming, which Mrs. Bristol, the plaintiff, had received on account of the note for $3,774.47

of Alice J. Noxon.    The plaintiff's attorney then sent Millard F. Noxon to Elizabethtown on a salary of ten dollars a week for the purpose of managing the business for the plaintiff. This business was not conducted in the name of the plaintiff, but in the name of T. F. Finnegan & Company, Finnegan being a clerk who was to have a share of the profits but no ownership in the goods.    Between the time of this purchase by the plaintiff and the levy she had bought new goods to the extent of $3,000.00, and made sales to the extent of $2,000.00. At the time of the sale by Noxon & Deming to the plaintiff, T. F. Finnegan helped make the inventory, and the value of the goods in the store at that time, including fixtures, was $3,485.40.    After adding to this sum the $3,000.00, the amount of the goods purchased, and deducting the $2,000.00 of goods sold, we have the amount of $4,485.40, the alleged value of the goods at the time of the levy.

The sheriff's appraisers fixed the value of the goods levied upon at about $4,800.00.

On the 12th of August, 1898, Millard F. Noxon filed his petition in bankruptcy, a receiver was appointed who, on the ground the property was perishable, sold the goods that were in the sheriff's hands by virtue of the levy under executions in this and two other actions.    It was admitted at the trial that "the plaintiff received $1,395.89 on account of the value of the goods."

At the close of the evidence the judge charged the jury in substance that under the facts as proved the plaintiff had established her title to the property, and that he so held as matter of law.

The court also charged that the only question for the jury to determine was the value of the property at the time of the conversion, which amount plaintiff was entitled to recover with interest, less the sum of $1,395.89 received in "some proceedings had in court."    The jury found a verdict of $3,000.00 for the plaintiff, and the Appellate Division affirmed the judgment entered thereon, writing no opinion.

The two principal points urged upon our attention are:

Was the court justified in taking from the jury the question whether plaintiff had a *bona fide* title to the property as against the sheriff; what is the effect, in law, of plaintiff accepting the proceeds of the sale in the bankruptcy proceedings?

As to the first point the facts are somewhat complicated regarding the various transfers of the property, and we have, therefore, stated them with considerable detail. There are several reasons why the trial court should have submitted to the jury the question of plaintiff's title to the property, growing out of the peculiar state of facts disclosed. The first transfer of the property was from the son to the father; the second from the father to the son's wife; the third from the son's wife and her partner, Mrs. Deming, who is her daughter, to the plaintiff, who is the mother of one and the grandmother of the other. It appears that in adjusting the payments for this property in the various transfers the transactions were largely on paper and a very small amount of money changed hands; that the stock of goods in question was, in the time covered by these transfers, shipped from Elizabethtown, Essex county, to Broadalbin, Fulton county, thence to Ballston Spa, Saratoga county, and ultimately returned to Elizabethtown.

It also appears that during the greater part of this time Millard F. Noxon was in charge of the stores where this property was offered for sale, either as an alleged agent or clerk.

There are other facts that rendered this a case for the jury, only one of which we will mention. Millard F. Noxon testified that of the goods that were in the store at the time his wife took title from his father, there were not to exceed three hundred dollars in value remaining on hand when the sheriff levied; his cross-examination on this point and in regard to other matters justifies the claim of the defendants' counsel that the case should have been submitted to the jury.

In referring to these salient facts in the case, we do not wish to be understood as intimating that they are necessarily incon-

sistent with an honest purpose throughout on the part of those who participated in these transfers. We simply hold that the good faith of the plaintiff and the validity of her title are questions for the jury. Whether an insolvent has conveyed without consideration, or whether a sale of goods and chattels has been accompanied by immediate delivery and followed by an actual and continued change of possession, are questions for the jury. (*Blaut* v. *Gabler*, 77 N. Y. 461; *Erickson* v. *Quinn*, 47 N. Y. 410; *Tilson* v. *Terwilliger*, 56 N. Y. 273; *Steele* v. *Benham*, 84 N. Y. 634.)

Transactions between relatives are subjected to rigid scrutiny. (*Hoboken Bank for Savings* v. *Beckman*, 36 N. J. Equity, 83; *Clinton Bank* v. *Cummins*, 38 N. J. Equity, 191; *Scofield* v. *Spaulding*, 54 Hun, 523; *Morris* v. *Morris*, 71 Hun, 45; *First National Bank* v. *Moffatt*, 77 Hun, 468; *Nichols* v. *Morrow*, 34 N. Y. S. R. 495.)

We will now consider the second point as to the effect in law of plaintiff's accepting the proceeds of the sale of the goods in the bankruptcy proceedings.

These proceedings are invoked by both parties, the counsel for plaintiff and respondent insisting that, as between the plaintiff and Millard F. Noxon, it has been determined therein that the plaintiff was the owner of the goods in question and that this adjudication is conclusive on the parties to this action.

In the present state of the record the question sought to be raised by the plaintiff's counsel is not here. He offered in evidence various orders and proceedings in bankruptcy which would have established the adjudication that the plaintiff in this action owned the property in question, if that court had jurisdiction to so decide, but the trial judge refused to receive them on the ground that the referee in bankruptcy had no jurisdiction to adjudicate as to the title of the property, he having power only to determine whether it belonged among the assets of the alleged bankrupt or not.

The respondent's exceptions are not presented by this appeal, but her counsel, on the argument, asked that we receive the rejected documentary evidence for the purpose of

affirming the judgment if we decided to do so. We, therefore, express no opinion on this point.

The counsel for the appellants contends that by accepting the proceeds of the sale in bankruptcy, the plaintiff has waived her claim against the sheriff, and that this action must fail.

As this case must go back for a new trial, and as the record is incomplete as to all that occurred in the bankruptcy proceedings, we do not feel justified in passing upon this question at the present time.

We are. also of opinion that the trial judge erred in refusing to allow the receiver in bankruptcy, who was sworn for defendants, and had testified as to what took place before the district judge in Buffalo when a receiver was appointed in the bankruptcy proceedings, to answer the question, " State what further was said and done." The defendants sought to show that the plaintiff's counsel assented to the appointment of the receiver.

The plaintiff's counsel had previously taken the stand for plaintiff and testified in substance that the court having announced its determination to appoint a receiver, he merely assented to the form of the order. He was asked, " Did you agree to anything else ? " and was allowed to answer that he did not, over the objection and exception of defendants.

The defendants were entitled to follow up this line of inquiry opened by the plaintiff. Defendants' counsel spread upon the record his offer to show that plaintiff's counsel assented to the appointment of the receiver and to the sale by him. The court refused to allow this line of proof and defendants excepted. The precise relations of the plaintiff to the bankruptcy proceedings are an important element in this aspect of the case.

The judgments of the Special Term and the Appellate Division should be reversed and a new trial granted, with costs to abide the event.

PARKER, Ch. J., HAIGHT, MARTIN, VANN and CULLEN, JJ., concur ; LANDON, J., not sitting.

Judgments reversed, etc.